# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| **CHASTITY DAWN FLORIDO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 09-5080-CV-SW-RED |
| | ) | |
| **HEARTLAND BEHAVIORAL** | ) | |
| **HEALTH SERVICES,** *a/k/a Great* | ) | |
| *Plains Hospital, Inc., et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 37), filed by counsel for Defendant Great Plains Hospital, Inc., d/b/a Heartland Behavioral Health Services ("Defendant"). After careful consideration, the Court **GRANTS** the Motion (Doc. 37).

## BACKGROUND[1]

Plaintiff Chastity Dawn Florido (Plaintiff) began working at Heartland Behavioral Health Services ("Heartland") on May 27, 2008, as an Admissions Coordinator in the admissions office. A significant aspect of her job required Plaintiff to answer incoming phone calls concerning admission into the Heartland facility and to communicate with other Heartland employees during this process.[2]

On January 14, 2009, Doug Beeman ("Doug"), a Transport Driver for Heartland, went into Plaintiff's office and touched Plaintiff on her back, kissed her on the forehead and on the mouth, told

---

[1] The Court accepts the following as undisputed material facts and facts viewed in the light most favorably to Plaintiff.

[2] Plaintiff disputes the adequacy with which she communicated with other employees, not her role at Heartland, and therefore is deemed to have admitted these facts. Local Rule 56.1(a).

her he loved her and left Plaintiff's office. On January 16, 2009, Plaintiff received flowers at work which she believes were from Doug.[3]

Plaintiff reported Doug to Human Resources Director Joe Hardin ("Joe") on January 16, 2009. After Plaintiff reported Doug, Joe interviewed Doug, determined he acted inappropriately and suspended him for three days.[4] Defendant also placed six conditions on Doug's ability to return to work. Specifically,

> 1) Doug was not allowed to enter the admissions office where Plaintiff worked at any time, for any reason,
> 2) Doug was not allowed to have any contact with Plaintiff,
> 3) Doug was required to walk in the other direction of Plaintiff if he ever saw her,
> 4) Doug was required to have a co-worker gather any paperwork he needed from the admissions office,
> 5) Doug was required to communicate any questions, concerns or incidents to Human Resources, and
> 6) Doug was required to attend additional sexual harassment and professional boundaries training.

Although Doug was permitted to return to work if he complied with these six conditions, he never returned to work at Heartland after he was suspended on January 16, 2009 and Plaintiff never saw Doug at Heartland after January 16. Plaintiff gave her resignation letter to Joe on March 4, 2009. However, Joe gave Plaintiff an opportunity to retract her resignation after he informed her Doug had resigned and would not be returning, but Plaintiff confirmed her resignation.[5]

Lastly, Plaintiff claims Defendant undertook several actions in retaliation against her for

---

[3] For purposes of Defendant's Motion, the Court will accept that Doug sent the flowers, although Plaintiff failed to cite to any reference in the record where Doug admitted to sending flowers, as she alleges in her Opposition.

[4] Plaintiff purports to dispute this allegation but only complains of the adequacy of Defendant's investigation and does not deny Defendant underwent these actions.

[5] Plaintiff denies this allegation but fails to support her denial with any reference to the record and therefore is deemed to have admitted this fact. Local Rule 56.1(a).

reporting sexual harassment to Defendant, which the Court will discuss in detail below.

## DISCUSSION

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"), and on May 26, 2009, she was issued a right to sue letter by the EEOC and MCHR. Plaintiff filed this lawsuit on August 19, 2009 in the circuit court of Vernon County, Missouri, which was removed to this Court. Plaintiff asserts claims under the Missouri Human Rights Act ("MHRA") and under Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging she was subjected to a hostile work environment, Defendant retaliated against her for reporting sexual harassment, and she was constructively discharged from Heartland. Defendant now moves for summary judgment on all three claims.[6]

**The conduct at issue does not meet the threshold creating a hostile work environment**

In order to prove a hostile work environment claim, Plaintiff must show:

> 1) she was a member of a protected group; 2) the occurrence of unwelcome harassment, 3) a causal nexus between the harassment and her membership in the protected group; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

*Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008).

A cognizable hostile work environment claim requires the harassment be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Helton v. Southland Racing Corp.*, 600 F.3d 954, 958 (8th Cir. 2010). Furthermore,

---

[6] Although Defendant does not discuss the MHRA in its Motion for Summary Judgment and Suggestions in Support, it is well established that claims under Title VII of the Civil Rights Act of 1964 and the Missouri Human Rights Act are analyzed under the same standards. *Weger v. City of Ladue*, 500 F.3d 710, 717 (8th Cir. 2007). *See also Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999).

3

the work environment must be objectively offensive and subjectively offensive, meaning a reasonable person would find the work environment hostile or abusive and Plaintiff actually perceived the environment as such. *Id*. at 958-59. Finally, determining whether or not the alleged harassment is sufficiently severe and pervasive is determined from all of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ' *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 843 (8th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993)).

Defendant claims Doug's conduct was not sufficiently severe or pervasive to constitute an actionable hostile work environment claim. After careful review, the Court agrees.

Plaintiff was subjected to unwanted harassment by her co-worker Doug. On January 14, 2009, Doug went into her office and kissed her on the forehead, on the mouth, touched her on the back, and told Plaintiff he loved her. Plaintiff also received flowers from Doug on January 16, before she reported his actions. However, under Eighth Circuit precedent, Doug's actions clearly did not meet the threshold creating a hostile work environment. The Eighth Circuit opinions in *Sutherland v. Missouri Department of Corrections*, 580 F.3d 748 (8th Cir. 2009) and *Duncan v. General Motors Corporation*, 300 F.3d 928 (8th Cir. 2002) are instructive.

In *Sutherland*, the Eighth Circuit found conduct similar to the harassment at issue, if not more severe, not actionable under Title VII. 580 F.3d at 752. In *Sutherland*, the plaintiff alleged that during an encounter with her co-worker, the co-worker put his hand on her shoulder, told her "they would have fun" if the co-worker and plaintiff worked together, and that he "would take care

4

of her…if you know what [he] mean[s]." *Id*. at 750. The co-worker further began rubbing plaintiff's arm, and proceeded to touch and then grab her breast. *Id*. The Court held such conduct was not actionable harassment under Title VII, recognizing actionable harm is a high threshold. *Id*. at 751-52.

Nor was Plaintiff subjected to more severe and pervasive actions than the conduct described in *Duncan*, where the Court ultimately found the defendant was entitled to judgment as a matter of law because the harassment did not amount to actionable harm under Title VII. *Id*. at 933. The plaintiff in *Duncan* was subjected to harassment spanning over two years. *Id*. at 931-33. Specifically, the plaintiff was subjected to a co-worker's request for a relationship, "four or five isolated instances of [the co-worker] briefly touching [plaintiff's] hand," the co-worker's request for the plaintiff to draw his planter (where the co-worker had a planter on his desk shaped like a man, with a hole in the man's pants allowing for a cactus to protrude), the co-worker and another's creation and display of a poster that portrayed the plaintiff as the president and CEO of the "Man Hater's Club of America," and the co-worker asking the plaintiff to type up the beliefs of the "He-Men Women Hater's Club." *Id*. at 935.

Plaintiff was subjected to unwanted physical contact on one occasion when Doug kissed Plaintiff and touched her on her back. Doug also told Plaintiff he loved her and sent her flowers. Importantly however, Doug never touched nor spoke to Plaintiff again. In light of Eighth Circuit precedent, it is clear the harassment does not meet the "high threshold of actionable harm." *Duncan*, 300 F.3d at 934.

Even if the Court were to find the conduct was sufficiently severe and pervasive to create a hostile work environment, summary judgment would be appropriate because Defendant undertook

5

prompt and effective remedial action. Defendant suspended Doug the same day Plaintiff reported him, in addition to the other remedial measures undertaken and Doug never harassed Plaintiff again. *See Zirpel v. Toshiba Am. Info. Sys., Inc.*, 111 F.3d 80, 81 (8th Cir. 1997) (Court affirmed entry of summary judgment in favor of the defendant where the defendant officially reported sexual harassment on Friday, January 15, the defendant issued a written warning to the harasser on Monday, January 18, told the harasser he would be fired if the defendant had to address the issue of sexual harassment in the future, and the harasser never bothered the plaintiff again). Plaintiff argues Defendant's investigation was flawed, disputes the effectiveness of the remedial actions, and alleges Defendant should have fired Doug instead of allowing him the opportunity to return. However, none of Plaintiff's contentions raise a genuine issue of fact regarding whether Defendant undertook prompt and effective remedial action in response to Doug's conduct. *See Weger*, 500 F.3d at 723-24 (recognizing a plaintiff is not entitled to the remedy of her choice after she alleges harassment, and further recognizing a 'flawed' investigation does not create a genuine issue of fact as to whether an employer's remedial actions are effective when such actions end the harassment).

Therefore, the Court grants summary judgment in favor of Defendant on Plaintiff's hostile work environment claim.

### **Plaintiff did not meet her burden establishing a *prima facie* case of retaliation and did not show Defendant's actions were a pretext for retaliation**

In order to establish a *prima facie* case of retaliation, Plaintiff must show that she "1) engaged in protected conduct; 2) a reasonable employee would have found the challenged action materially adverse; and, 3) the materially adverse action was causally linked to the protected conduct." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008). If Plaintiff establishes her prima facie case, the Defendant must show a " 'non-retaliatory reason for the adverse employment

action.'" *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007) (quoting *Green v. Franklin Nat'l. Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006). If Defendant meets its burden, Plaintiff must then show through evidence that there is a question of fact that Defendant's reason is merely a pretext for retaliation and the evidence establishes a reasonable inference Defendant acted to retaliate. *Id.*

Plaintiff alleges several actions undertaken by Defendant were to retaliate against her for reporting Doug's conduct at Heartland. The following are what Plaintiff claims were retaliatory actions. She received a six-month evaluation concerning her work at Heartland two months late and five days after she reported Doug's conduct, which was also critical of Plaintiff. Defendant moved Plaintiff from her office into an open area, took her job title away and reduced her work hours by sending her home early without pay on several occasions. Plaintiff received several emails from her supervisor Tricia Bohle ("Tricia") critical of Plaintiff's communication with her after Plaintiff reported the sexual harassment. Plaintiff received a written warning on February 9, 2009, criticizing her communication with Tricia. Plaintiff's office hours were changed from 10:00 a.m. through 6:00 p.m. to 12:00 p.m. through 8:00 p.m. following the February 9 written warning. Lastly, Plaintiff claims Joe told her she was flirtatious and Tricia advised Plaintiff not to speak with other male co-workers.[7]

With respect to Plaintiff's claims that she was sent home early on several occasions without pay, thereby reducing her work hours, and Defendant took away her job title, Plaintiff does not cite to the record to support her allegations. Thus, the Court will not consider these allegations. *Weger*,

---

[7] Plaintiff also alleges Tricia advised her not to be alone in other male co-workers' offices; however, her citation to the record does not support this contention and will not be considered. *Weger*, 500 F.3d at 728. *See also* Fed. R. Civ. P. 56(e); Local Rule 56.1(a).

7

500 F.3d at 728. *See also* Fed. R. Civ. P. 56(e); Local Rule 56.1(a). Plaintiff also alleges her office was taken away and she was moved into an open area. However, the citation to the record provided by Plaintiff does not support this allegation and the Court will not consider this allegation. *Id.*

The parties do not dispute Plaintiff engaged in protected conduct by reporting the incident between her and Doug to Defendant on January 16, 2009. At issue is whether the remaining allegations of retaliation are materially adverse employment actions, whether Plaintiff can show the employment actions are causally connected to her protected conduct on January 16 and if so, whether Defendant's reasons for engaging in such actions were merely a pretext for discrimination.

Turning to Plaintiff's remaining claims, first is the six month evaluation over Plaintiff's work performance at Heartland. Plaintiff claims she received the evaluation two months late, which was a retaliatory action. She also claims the evaluation was retaliatory because it criticized her ability to adequately communicate with necessary staff. However, the six month evaluation was not a materially adverse employment action in either instance.

Although Tricia did not meet with Plaintiff concerning the evaluation until January 21, 2009, five days after Plaintiff reported Doug's conduct to Defendant, the evaluation was filled out before Plaintiff reported the harassment.[8] Assuming the evaluation was given to Plaintiff two months late

---

[8] First Plaintiff fails to specifically deny Defendant's contention that the evaluation was filled out in December 2008, as required by Local Rule 56.1(a), and therefore has admitted this fact. However, later on in her Response, Plaintiff argues Tricia's signature on the evaluation is dated January 15, 2009, in an attempt to argue the evaluation was not completed in December 2008. Plaintiff contends that aside from Tricia's signature and corresponding date of January 15, 2009, and the fact that the meeting between her and Plaintiff over the evaluation took place on January 21, there is no evidence the evaluation was filled out before she reported the sexual harassment. However, Mike Ham, chief executive officer at Heartland, states the evaluation was filled out in December 2008. (Ham Affidavit Doc. 39 p. 3). Plaintiff admitted during her deposition she did not know when her evaluation was filled out. Even if the Court were to entertain Plaintiff's theory, viewing the facts in the light most favorable to Plaintiff, the Court

8

as she alleges, the evaluation was untimely well before Plaintiff engaged in her protected activity. The same is true with respect to any criticism contained in the evaluation, which was filled out before Plaintiff reported Doug's conduct and which critiqued Plaintiff's work from May 2008 to November 2008, before Plaintiff reported the harassment. Employment actions undertaken before Plaintiff engaged in her protected activity cannot be retaliation for the subsequent protected activity. *Donnelly v. St. John's Mercy Med. Ctr.*, 635 F. Supp. 2d 970, 1001 (E.D. Mo. 2009) (citing *Stewart*, 481 F.3d at 1044).

Next are Plaintiff's claims that emails sent from Tricia were retaliatory. First, Plaintiff fails to specify which emails in the record are retaliatory. She merely alleges she "faced an increasing number of emails instructing her to increase her communication with her supervisor." (Plaintiff Opposition Doc. 42 p. 10). However, several emails in the record sent after January 16 do not specifically discuss the issue of communication, although the emails may reflect a break down in communication between Plaintiff and others. (Exhibit 22 Doc. 38-3 p. 48, 52, 53, 54). Second, the four emails sent by Tricia that actually discuss communication are not materially adverse employment actions. (Exhibit 22 Doc. 383-3 p. 50-51, 55-56, 57, 66-67, 68-69). In order for an action by an employer to constitute a material adverse action, the action "must produce some 'injury or harm.' " *Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 644 (8th Cir. 2009) (quoting *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 917 (8th Cir. 2007). The Eighth Circuit has looked to whether an action results in reduced "pay, salary, benefits, or prestige." *Sutherland*, 580 at 752. The Court in *Sutherland* recognized that a lower evaluation does not by itself show a

---

would find the evaluation was completed on January 15, one day before she engaged in her protected activity. *See infra* p. 9.

material adverse action. *Id. See also Littleton*, 568 F.3d at 644 (recognizing prior cases finding that "commencing performance evaluations, or sending a critical letter that threatened 'appropriate disciplinary action,' or falsely reporting poor performance, or 'lack of mentoring and supervision' were actions that did not establish a prima facie case of retaliation, absent showings of materially adverse consequences to the employee"). None of the emails, aside from instructing Plaintiff to handle work situations differently, threaten Plaintiff with any adverse action. Finally, although Plaintiff received four emails between February 2009 and March 2009 which were critical of her ability to communicate, she received similar emails before she reported the harassment. Plaintiff received one email specifically referring to communication in October 2008, months before she complained of sexual harassment. (Exhibit 22 Doc. 38-3 p. 64). There are also several other emails sent before January 16 revealing communicational problems as well. (Exhibit 22 Doc. 38-3 p. 60, 61, 62, 65). As such, the emails in the record are not materially adverse employment actions.

For the same reasons, comments made by Joe and Tricia, noted above, are not materially adverse employment actions. Plaintiff has not demonstrated how these comments produced any injury or harm to Plaintiff, aside from the fact that such comments were made. Thus, these comments were not materially adverse employment actions. *Littleton*, 568 F.3d at 644.

Last is Plaintiff's claim that the February 9, 2009 written warning and subsequent change in office hours following her written warning were undertaken in retaliation. Assuming such actions were materially adverse employment actions, Plaintiff must show these actions were causally connected to her protected action of reporting the harassment at Heartland. To prove causal connection, Plaintiff must show that Defendant's retaliatory motive factored into the adverse employment action. Plaintiff has not argued or shown any direct evidence of retaliation. *Jackson*

10

*v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1142 (8th Cir. 2008). However, evidence demonstrating an inference of retaliatory motive can be used to establish causal connection, such as timing between the protected activity and materially adverse employment action. *Thomas v. Corwin*, 483 F.3d 516, 531 (8th Cir. 2007). Typically, " 'more than a temporal connection between the protected conduct and adverse employment action is required to present a genuine issue on retaliation.' " *Green*, 459 F.3d at 915 (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 113, 1136 (8th Cir. 1999)). Notably, the Eighth Circuit has found that two weeks between the protected activity and materially adverse employment action established a *prima facie* claim of retaliation, " 'but barely so.' " *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1080 (8th Cir. 2010) (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002).

Plaintiff argues she has met her burden to establish causal connection because of the temporal proximity between her reporting sexual harassment and the alleged retaliatory actions. She also argues Defendant only began criticizing Plaintiff over communication after she reported the sexual harassment, thus creating an inference of retaliatory motive. The record shows Plaintiff received some criticism before she reported sexual harassment. Additionally, Defendant's concern over Plaintiff's ability to adequately communicate with Tricia and others arose before Defendant engaged in her protected activity, as evidenced by her six month evaluation and several emails in the record, dated before Plaintiff reported the sexual harassment. *See Hervey v. Cnty of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008) (" 'Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity.' "). However, given the close temporal proximity between Plaintiff reporting the sexual harassment and Defendant issuing the written warning and changing Plaintiff's

work hours, the Court assumes for purposes of this discussion that Plaintiff met her burden establishing a *prima facie* claim of retaliation with respect to these two employment actions.

In response, Defendant has set forth legitimate, nondiscriminatory reasons for changing Plaintiff's work hours and issuing the written warning, namely to correct Plaintiff's alleged problem communicating with other Heartland employees. The burden shifts back to Plaintiff to show Defendant's reasons were a pretext for retaliation. Plaintiff failed to address the issue of pretext. Morever, although the Court assumes Plaintiff established the causal connection element through temporal proximity alone, temporal proximity by itself is typically insufficient to establish pretext. *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 978 (8th Cir. 2006). The record clearly shows Defendant was concerned about Plaintiff's ability to adequately communicate with Heartland employees before she engaged in her protected activity. Plaintiff offered no evidence showing Defendant's reasons for changing her work hours and issuing the written warning has no basis in fact, or any other evidence undermining Defendant's reasons for its actions. *Allen Health Sys.*, 302 F.3d at 834-35. Thus, Plaintiff cannot show the February 9, 2009 written warning and subsequent change of Plaintiff's work hours were done in retaliation.

Therefore, Plaintiff failed to establish her claim of retaliation and Defendant is entitled to summary judgment on Plaintiff's claim.

### **Plaintiff cannot establish a claim of constructive discharge**

Plaintiff's final claim is that she was constructively discharged. Constructive discharge is where an employer "deliberately renders the employee's working conditions intolerable" which forces the employee to quit. *Wright v. Rolette County*, 417 F.3d 879, 886 (8th Cir. 2005). To establish a claim that Plaintiff was constructively discharged from her employment with Defendant,

she must prove that a reasonable person would find the conditions to be intolerable, and Defendant intended to force Plaintiff to quit or " 'could have reasonably foreseen that the employee would [quit] as a result of its actions.' " *Id.* (quoting *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th Cir. 1999).

Because the harassment at issue did not create a hostile work environment and Plaintiff premises her constructive discharge claim on the same grounds, Plaintiff cannot establish a claim of constructive discharge. *Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975, 981 (8th Cir. 2003). *See also O'Brien v. Dep't of Agric.*, 532 F.3d 805, 811 (8th Cir. 2008). Also, not to be forgotten in all of this is that the record reflects that when Plaintiff tendered her resignation letter to Defendant, she was told Doug was no longer employed at Heartland and given the opportunity to retract her resignation letter. Thus, the Court grants summary judgment in favor of Defendant with respect to Plaintiff's constructive discharge claim.

## CONCLUSION

For the reasons set forth above, the Court grants summary judgment in favor of Defendant with respect to Plaintiff's hostile work environment claim, retaliation claim and constructive discharge claim. Therefore, complete summary judgment is granted.

**IT IS SO ORDERED.**

DATED: October 20, 2010                 */s/ Richard E. Dorr*
                                         RICHARD E. DORR, JUDGE
                                         UNITED STATES DISTRICT COURT